# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | James B. Zagel | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 04 CR 126 - 1 | **DATE** | 9/1/2004 |
| **CASE TITLE** | UNITED STATES vs. SEFERINO REYES | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to] ☐ FRCP4(m) ☐ Local Rule 41.1 ☐ FRCP41(a)(1) ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] Defendant's motion (16-1) to withdraw plea of guilty is denied. Enter memorandum opinion and order.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | Document Number |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP 0 3 2004 | |
| | Notified counsel by telephone. | | date docketed | |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | | |
| DW | courtroom deputy's initials | 2004 SEP -2 PM 4:33 U.S. DISTRICT COURT CLERK | date mailed notice | |
| | | Date/time received in central Clerk's Office | mailing deputy initials | |



UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

UNITED STATES OF AMERICA

v.

SEFERINO JAVIER BENJAMIN
REYES-ACOSTA.

No.04 CR 0126
Judge James B. Zagel

## MEMORANDUM OPINION AND ORDER

1.

On 12 May 2004, the defendant entered a plea of guilty to an indictment which alleged that he was "an alien who previously had been deported and removed from the United States on or about May 9, 1991, was present and was found in the United States without previously obtaining the express consent of the Attorney General of the United States for re-application by defendant for admission into the United States, in violation of Title 8, United States Code, Sections 1326 (a) and (b) (2)."

The charge follows the bare statutory language of 1326 (a) defining the crime. Congress added subsection 1326 (b) to allow for a series of sentence enhancements based on the reasons for any prior removal that increase the 2-year maximum imprisonment set forth in 1326(a). The enhancement invoked in this indictment, 1326 (b) (2), provides a 20-year maximum for defendants whose removal was subsequent to a conviction for commission of an aggravated felony. I assume, without deciding, that after *United States v. Booker*, 375 F.3d 508, 2004 U.S. App. LEXIS 14223



(7th Cir. 2004), the charge would have to allege specifically that removal occurred after an aggravated felony conviction instead of simply reciting a generic violation of 1326 (b) (2).

The United States Sentencing Guidelines provide a base offense level of 8 for a violation of 1326 (a) and go on to provide their own list of enhancements that do not mirror precisely the enhancements provided in 1326 (b) (2). Two of the enhancements found in 1326 (b) (2) involving unlawful entry by aliens returned before their sentences expired or those who were returned as inadmissible aliens are not mentioned in the Guidelines. Instead, the Guidelines offer various levels of enhancement based solely on the nature of the defendant's prior convictions and sentences. The prosecution contended that § 2L.1.2 (b) (1) (A) of the Guidelines applied here. This Guideline enhancement adds 16 levels to the defendant's base level of 8 where the defendant had been convicted of a "drug trafficking offense for which the sentence imposed exceeded 13 months."

In the plea agreement, the defendant admitted that he had been sentenced to five years in prison for possession of a controlled substance with intent to deliver, which is also an aggravated felony within the meaning of 1326 (b) (2).

2.

It is the decision of *Blakely v. Washington,* 124 S. Ct. 2531 (2004) and the subsequent opinion of our Court of Appeals in *Booker* that precipitated defendant's motion to withdraw his guilty plea. *Booker* held that *Blakely* invalidated much of the approach of the United States Sentencing Guidelines. *Booker,* 2004 U.S. App. LEXIS 14223 at *6-8. With respect to this case, the holding requires that the government prove beyond a reasonable doubt the facts which would justify the 16-level increase and do so before a jury (unless waived) with evidence that is

admissible under the Federal Rules of Evidence. All this is in contrast to the Guideline sentencing which remits the determination of aggravating circumstances to the judge who may accept evidence that would be inadmissible at trial and need only find the circumstances proved by a preponderance of the evidence. Of course, *Booker* may not hold up, but it is binding upon me now, and I shall follow it. For the little or nothing this is worth, I agree with *Booker*.

While early decisions on the retroactive effect of changes of law sometimes limited effective change to cases not yet tried (in one instance to restrict the reach of *Miranda v. Arizona*), the clear rule now is that change in law applies to cases, such as this one, that have not reached final judgment. *Griffith v. Kentucky*, 479 U.S. 314 (1987).

3.

The theory of the motion to withdraw is that the defendant was forced to admit to the facts of his prior conviction. If he had failed to do so, the government could contend that he had not fully accepted responsibility, which would effectively add 3 levels to his final offense total. Of course, I might still have found acceptance of responsibility, but defense counsel could not rely on that outcome.

Essentially, the defendant's argument is that the decision to concede the enhancement was made with the understanding that he had no alternative because proof of the prior conviction could easily be made with the use of hearsay record evidence under a preponderance of the evidence standard by a decision maker who, unlike a jury, might not decide to exercise lenity. A jury would likely understand that the additional fact would affect sentence and, if the defendant made a good impression, it might decide that conviction of the basic offense was enough.

3

The strategic purpose of refusing to plead under the current sentencing regime would be this: If the juror went for the defendant on this issue, the defendant would reduce, by 16 steps, his offense level. Even if he lost the steps that he might get for acceptance of responsibility after trial, the net gain to defendant is high. In the end, if our guidelines fall as a whole, none of this would make much of a difference. If they fall only as to enhancements, then the strategy would make sense. The prosecution would have to present its prior conviction evidence to the jury under a beyond-a-reasonable-doubt standard, and the defendant would be entitled to argue for acceptance of responsibility before a judge under a preponderance-of-the-evidence standard.

The practice in this District and others is to give criminal case juries an instruction that they are not to consider the possible sentence during deliberations on guilt or innocence. They are told this is a matter for the court. With the exception of Texas and a few other states, there is a general distrust in all legislatures toward jury sentencing. Illinois abandoned its limited jury sentencing regime a few decades ago. *Blakely* will override the legislature's preference that defendants be sentenced by judges and, at least, partially restore the jury's role in sentencing.

The use of the jury in this way would represent a sea change in the federal criminal jurisprudence. Many jurors, and therefore many juries, will understand that they have some power over what the sentence will be. With juror input on sentencing, the effort to achieve relative consistency of sentencing–a goal of the Guidelines–will fail more often than now. Also, legislative criticism of certain judicial sentences will have to be redirected to the actions of American jurors. Even when disapproval of the jury sentencing decision is justified, elected officials will be reluctant to levy it, as such disapproval would be unfair to our citizens who serve on just a single case and from whom much relevant sentencing information is withheld. While a bit of legislative

condemnation of sentencing is overheated and unjust, some of it is reasoned, fair and useful. It is true that Congress could enact a rigid system of mandatory minimums in an effort to avoid these problems but, over time, people become aware of these provisions. As history has shown, jurors can be reluctant to convict if they believe the sentences are too harsh.

4.

The defendant pled guilty after warnings which were indisputably adequate when given. Such warnings ordinarily preclude any right to withdraw the appeal. Those same warnings, however, might not be adequate if given today.

Historically, failure of any kind in guilty plea procedures was irreparable error. *McCarthy v. United States*, 394 U.S. 459 (1969). Congress changed this rule (which the *McCarthy* opinion did not put on Constitutional footing) by enacting Rule 11(h), which said a variance from the prescribed procedure "is harmless error if it does not effect substantial rights." Over time, the Supreme Court has shown reluctance to overturn pleas unless, on the record as a whole, prejudice could be shown. *United States v. Timmreck*, 441 U.S. 780 (1979); *United States v. Vonn*, 535 U.S. 55 (2002). Indeed, the Court has recently reminded us that it ought not to be easy to overturn guilty pleas. *United States v. Dominguez Benitez*, 124 S.Ct. 2333 (2004). The rationale being that there is an unacceptable risk of prejudice to the prosecution if a plea is easily overturned well after the time of the plea.

These cases, though, are distinguishable from the case now before me because they dealt with challenges to pleas made on appeal or during post-conviction proceedings. See especially *Peguero v. United States*, 526 U.S. 23 (1999) (failure to warn does not justify collateral relief if petitioner knew of the right from other sources). Here, since the objection comes quite soon after

the plea, the risk of prejudice to the government is virtually non-existent and ought not to be used to deny this motion to withdraw.

The threshold issue then becomes whether the changes in sentencing law apply retroactively to cases like this one where the defendant has pled guilty but has not been sentenced. Despite fits and starts, the Court has now settled on the proposition that changes in law will apply–at a minimum–to all cases, including this one, in which judgment has not become final. *Griffith v. Kentucky*, 479 U.S. 314 (1987).

Since I find that the *Blakely* rules may be retroactively applied here, I must now consider whether they justify overturning a plea properly entered under the old regime. Congress has provided the following rule for cases such as this one: "A defendant may withdraw a plea of guilty...if...the defendant can show a fair and just reason for requesting the withdrawal." Rule 11 (d) (2) (B).

When you consider that this is a case about the effects of an after-plea change in law that, arguably, might change the calculus the defendant would use to plead guilty and not a case about the propriety of admonitions, it becomes clear that there is no fair or just reason to permit withdrawal. The seminal case on this issue is *Brady v. United States*, 397 U.S. 742 (1970). Brady pled guilty to federal kidnapping charges to avoid the death penalty. About nine years after his plea, the federal death penalty provisions were declared unconstitutional by *United States v. Jackson*, 390 U.S. 570 (1968). Brady sought to withdraw his plea on the grounds that it had been unfairly coerced by the statute's death penalty provision. *Brady*, 397 U.S. at 744. The Court found that Brady's plea was not impugned by his failure to anticipate *Jackson*, holding that withdrawal of a plea is not allowed "simply because it later develops that the State would have had a weaker case

than the defendant had thought or that the maximum penalty...has been held inapplicable in subsequent...decisions." *Id.* at 757

Although *Brady* has undergone no transformation in the lower courts, it is thought to have left open withdrawals, such as the one illustrated by *United States v. Gomez-Orozco*, 188 F.3d 422 (7th Cir. 1999). There, an illegal reentry defendant was permitted to withdraw a plea because there was evidence that he was not an alien. *Gomez-Orozco* is fundamentally different than *Brady* because the withdrawal of the plea was based on the fact that the government may have had no case, not because the government may have had a weaker case. See also *United States v. Andrade*, 83 F.3d 729 (5th Cir. 1996) (change in law decriminalized, for federal purposes, the mere possession of a firearm under the facts of the case at bar.)[1]

Because the claim for withdrawal here is based on a change in sentencing procedure that makes the government's job somewhat more difficult than previously anticipated, there is, I think, no daylight at all for defendant. After *Apprendi v. New Jersey*, 530 U.S. 466 (2000), there were attempts to withdraw pleas based on the fact that the defendant pled under the erroneous impression that it would be easier for the prosecution to get an enhanced sentence than turned out to be the case after *Apprendi*, none of which, to my knowledge, were successful. E.g. *United States v. Sanchez*, 269 F.3d 1250 (11th Cir. 2001) (en banc); *United States v. Duarte*, 246 F.3d 56 (1st Cir. 2001).

---

[1] The general reluctance to void pleas is well illustrated by *People v. Jones*, 44 N.Y.2d 76, 375 N.E.2d 41 (1978), in which the Court of Appeals refused to permit withdrawal even when the District Attorney failed, prior to the plea, to reveal to defense counsel that an indispensable prosecution witness had died. In *Jones*, of course, the central issue was the ambit of another *Brady* decision, to wit, *Brady v. Maryland.*

The post-*Apprendi* cases are particularly telling here because the Court in *Blakely* said that its task was to apply the rule developed in *Apprendi* to the Guideline sentencing structure. Essentially then, both *Apprendi* and *Blakely* stand for the proposition that where a particular fact increases the sentence beyond what would have been given absent that factor, then proof of the existence of the fact must be made to the jury under the same rules by which other elements of the offense are proven.[2]

The defendant here does not attempt to demonstrate any palpable prejudice. There is no claim that the prior conviction and sentence could not be conclusively proven beyond any reasonable doubt.

As the record now stands, what could have been lost here is only the chance that, out of mercy, a jury would have ignored overwhelming evidence and decided to ignore the truth. While the chance to pull the wool over a jury's eyes is inherent in the right to a jury trial, we deal here with a case in which the jury was validly waived on the question of guilt or innocence. What remains here is the right to have a jury decide a sentencing factor. While *Blakely* emphasized the importance of the right to a jury on sentencing factors, it did not assert that it was an inviolable

---

[2] I note too that the language in *Apprendi v. New Jersey*, 503 U.S. 446 (2000) and *Almendarez-Torres v. United States*, 523 U.S. 224 (1998), which demonstrates that the one aggravating factor that does not need to be proven before a jury is one of a prior conviction, which is the aggravating factor in this case. The reason I am reluctant to rest on this ground is that *Blakely* emphasized not only the jury right, but also the right to have proof beyond a reasonable doubt, which is made under the conventional rules of evidence. Issues of standard and method of proof will rarely, if ever, affect the result of a finding that the defendant had a prior conviction. I believe the Supreme Court will not change its treatment of prior convictions in sentencing in any respect. But, I am not as certain of this result as I am of the application of *Brady v. United States* principles to pre-*Booker* pleas of guilty and, thus, have decided the case on the latter grounds. However, I would also rest on the prior conviction exception as an alternate ground for my decision here.

right inherent in all criminal prosecutions. The dissenters in *Blakely* said that a legislature could construct sentencing systems that required no jury decisions on specific sentencing factors. This proposition was unchallenged by the majority. Of course, where mandatory minimums are used, the jury, if it knew of the minimum, could exercise its power, but not its right, to acquit the clearly guilty simply because they thought the sentence was too high.

A guilty plea which admits a sentencing enhancement in order to insure a sentencing benefit to a defendant seems to be an unlikely candidate for overturning without a showing of some reasonable chance of prejudice to a legitimate interest of the defendant. Here it is not said that the enhancement might not be proved and the interest of the defendant is to have a chance that the jury might reach a verdict against the evidence.

For all these reasons, I must find that the change in law wrought by *Blakely* is not a "fair and just reason" for withdrawing the plea.

5.

Since the defendant here could have raised *Blakely* objections to the Guidelines before the plea, the Government now claims the failure to do so precludes the granting of this motion. I do not think that this is true. There are few, if any, opinions in change of law cases that turn away withdrawal motions because the defense counsel did not raise the point prior to a plea. This is so because change in law is "later" and therefore "new" and not something that ought to have been foreseen. While Counsel in this case may have known that *Blakely* had been argued, she may quite reasonably have decided the point was not worth raising on grounds both general and specific.

The general grounds are that before the *Blakely* decision, there were two decisions by the Supreme Court that had found the United States Sentencing Guidelines to be constitutional.

*Mistretta v. United States,* 488 U.S. 361 (1989); *Edwards v. United States,* 523 U.S. 511 (1998). It is my impression that most lawyers and judges were surprised by the apparent breadth of the *Brady* opinion.

The specific grounds are that the charge of unlawful reentry after removal for the commission of a criminal offense is simple to prove and practically impossible to defend. The prosecution can make its case with a single witness who encountered the defendant in the United States. The defendant's very presence in the courtroom is damaging. A few other witnesses can establish that the fingerprints of the defendant match the prints of the person who was previously convicted of an aggravated felony and then removed by deportation. Defenses, like a claim that one was forced to cross the border at gun point, are vanishingly rare. So, these cases almost always end in guilty pleas as this one did forty-four days before the Supreme Court decided *Blakely.*

The motion to withdraw the plea of guilty is DENIED.

ENTER:

James B. Zagel
United States District Judge

DATE: 1 September 2004